## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TAWANNA MORTON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:13-cv-01603-RDP** |
| | } | |
| **THE AUTOMOBILE INSURANCE** | } | |
| **COMPANY OF HARTFORD, CONN.,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendant Automobile Insurance Company of Hartford, Connecticut's Motion for Summary Judgment  (Doc. 34), filed November 19, 2014.  The Motion has been fully briefed.  (Docs. 35, 38, 39).  The only claim remaining before the court is Count Five of Plaintiff's Complaint for breach of contract.  (*See* Doc. 1, Ex. A, Pl. Compl. ¶¶ 36-38; Doc. 12 (dismissing all other counts)).  Specifically, Plaintiff alleges in that count that Defendant unlawfully breached its contract with her (*i.e.*, Defendant is in breach of obligations imposed by Plaintiff homeowner's insurance policy covering certain property Plaintiff owned) after a fire loss in July 2007.  For the purposes of this Motion, Defendant argues that, because Plaintiff rented out the insured premises and failed to satisfy certain of her post-loss obligations, Plaintiff is not entitled to recover under that insurance policy.

After  careful  review  of  Defendant's  Motion  (Doc. 34),  along  with  the  briefs  and submissions filed in connection with it, and for the reasons outlined in this opinion, the court concludes that there are no material issues of fact in this case and that Defendant is entitled to summary judgment on Plaintiff's breach of contract claim as a matter of law.  Accordingly,

Defendant's Motion is due to be granted, and Plaintiff's case is due to be dismissed with prejudice.

## I.        Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324; *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997) (facing a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations.").

The substantive law will identify which facts are material and which are irrelevant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *See id.* at 249.

## II.      Facts[1]

Plaintiff owned a house located on 2407 Longbow Drive in Birmingham, Alabama (the "Property"), but she had not lived there since 2004 when she moved into her husband Al Morton's house at 701 Cedarbrook Circle, Birmingham, Alabama.  (Doc. 36, Ex. B, Pl. Dep. 44:5-9, 46:7-14, 47:8-14).  In 2004 or 2005, Plaintiff began renting the Property through the U.S. Department of Housing and Urban Development's Section 8 housing program.  (*Id.* at 64:12-65:8).  Plaintiff claims she rented the Property fully furnished, up to and including the time of the fire.  (*Id.* at 68:17-69:3, 204:16-206:8).  In March 2006, Plaintiff began renting the Property to Shaunna Reese.  (*Id.* at 74:11-75:5; Doc. 36, Def.'s Ex. 3 to Pl. Dep., Reese Lease).  Reese lived at the Property with her two daughters.  (Doc. 36, Ex. C, Reese Dep. 29:16-18).  Plaintiff received $445 through Section 8 and an additional $200 directly from Reese in monthly rent. (Doc. 36, Ex. B, Pl. Dep. 88:16-90:22).

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Furthermore, Appendix II to the court's Initial Order (Doc. 5) sets forth the court's Summary Judgment Requirements.  Appendix II specifically notes that "briefs and evidentiary materials that do not conform to the following requirements may be stricken." (Doc. 5 at 17).  Appendix II requires that all "briefs . . . begin with a statement of allegedly undisputed relevant material facts set out in separately numbered paragraphs. Counsel must state facts in clear, unambiguous, simple, declarative sentences. *All statements of fact must be supported by specific reference to evidentiary submissions.*" (Doc. 5 at 12) (emphasis added).  Appendix II requires that in responsive briefs, "[t]he first section must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts.  The non-moving party's response to the moving party's claimed undisputed facts shall be in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts. *Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based.* **All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment**." (Doc. 5 at 13) (certain emphasis added).  Plaintiff's response to Defendant's Motion utterly fails to dispute Defendant's statement of facts, and is almost entirely devoid of record citations.  (Doc. 38).  Therefore, nearly all of Defendant's statements of fact are deemed admitted, except for those specifically contradicted by Plaintiff's citations to the evidentiary record.

Despite the fact that Plaintiff had not resided at the Property since 2004, Plaintiff continued to purchase and renew an AICH homeowner's insurance policy on the Property (the "AICH policy"), which ran through August 6, 2007. (Doc. 36, Ex. I, AICH Policy). The AICH policy only provides coverage for the insured's "residence premises," which it defines as "the one or two family dwelling, other structures, and grounds or that part of any other building where *you reside* and which is shown as the 'residence premises' in the Declarations." (*Id.* at 2 of 21 (emphasis added)). Plaintiff is the named insured under the AICH policy, and the policy defines "you" and "your" as the named insured. (*Id.* at 1 of 21). The Declarations page of the AICH policy lists the location of the "Residence Premises" as 2407 Longbow Drive, Birmingham, Alabama, 35214. (Doc. 36, Ex. I, Declarations, at 1 of 2).

The AICH policy excludes coverage for personal property owned by an insured, if that "property [is] contained in an apartment regularly rented or held for rental to others by any insured" or that "property [is] rented or held for rental to others away from the residence premises." (Doc. 36, Ex. I, AICH Policy, at 4 of 21). In addition, the AICH policy contains certain limitations for property used for business purposes. (*See, e.g.*, *id.* at 3 of 21). Defendant argues that, as amended by policy forms HA-300 AL (12-02) and 55621 (06-99), its liability is limited to $1,250 for Plaintiff's personal property used for business purposes. (*See* Doc. 36, Ex. I, HA-300 AL (12-02), at 1 of 4; Doc 36, Ex. I, 55621 (06-99), at 1 of 4).

In Plaintiff's Objection to Summary Judgment, Plaintiff claims that, before renting out her Property, she contacted an insurance agent at Clark and Associates. (Doc. 38 at 2).[2] According to Plaintiff, she explained that she intended to rent the Property through Section 8 housing and wanted to make certain "that her insurance was good under the circumstances."

---

[2] Plaintiff contends that when she renewed her homeowner's policy in mid-June 2007, the insurance company told her to address her questions about the policy to the insurance agents at Clark and Associates. (Doc. 38 at 2). Therefore, Plaintiff claims she viewed the agents to be the true representatives for Defendant. (*Id.*).

(*Id.*).   Plaintiff alleges the agent assured her that she had no reason for concern.   (*Id.*).   Additionally, Plaintiff suggests Section 8 authorities contacted Clark and Associates to verify that the AICH policy was in good standing.   (*Id.*).   Plaintiff argues she detrimentally relied upon her insurance agent's answers concerning the AICH policy's validity and verification of policy rules.   (*Id.*).

On July 23, 2007, six days before the fire, Reese arrived home to the Property to find the back door unlocked, lighter fluid poured over the kitchen counter, and the stove on.   (Doc. 36, Ex. C, Reese Dep. 64:11-66:9, 68:4-12; Doc. 36, Ex. D, Incident Report, July 23, 2007, at 2).   Reese did not leave the back door unlocked, and did not leave the stove on.   (Doc. 36, Ex. C, Reese Dep. 64:18-65:7, 68:4-12).   There was no sign of forced entry.   (*Id.* at 68:8-12).   Reese immediately reported the matter to the police and filed an incident report.   (Doc. 36, Ex. C, Reese Dep. 70:3-7; Doc. 36, Ex. D, Incident Report, July 23, 2007).   After this incident, Reese spoke with Plaintiff about the incident and told Plaintiff that she was likely going to have to move out of the house.   (Doc. 36, Ex. E, Recorded Pl.-Reese Conversation 7).   During the call, Reese also told Plaintiff that her (Reese's) furniture was in the house.   (*Id.* at 5).   Plaintiff recorded the telephone call, and at no time in the telephone call did Plaintiff state that her own personal property items were in the house, or that the furniture in the house did not belong to Reese.   (*See id.*; Doc. 36, Ex. F, Pl. EUO 69:6-72:19).

On July 24, 2007, five days before the fire, the Property was foreclosed. (Doc. 36, Ex. N, Foreclosure Deed).   Initially, Plaintiff argued that she was unaware that the house was going through foreclosure proceedings at the time of the fire.   (Doc. 36, Ex. B, Pl. Dep. 93:4-17; Doc. 36, Ex. F, Pl. EUO 121:14-18).   However, the record shows that on July 17, 2007, Plaintiff actually attended a hearing at which she voluntarily and orally dismissed a complaint that she

5

had filed to stop the foreclosure proceedings.  (Doc. 36, Ex. Q, Order of Dismissal, July 20, 2007; *see also* Doc. 36, Ex. P, Compl. for Injunctive Relief to Stop Foreclosure, June 25, 2007 (filed by Plaintiff)).  Furthermore, it is undisputed that, at the time of the fire, Plaintiff and her husband, Al Morton, were in bankruptcy.  (Doc. 36, Ex. H, Pl. Bankr. Petition; Doc. 36, Ex. K, Al Morton Bankr. Petition).[3]

On July 29, 2007, a fire occurred at the Property while Reese and her children were away.  (Doc. 36, Ex. A, Fire Dep't Rep.; Doc. 36, Ex. C, Reese Dep. 85:2-3, 87:4-10).  Due to the suspicious circumstances surrounding the fire, Defendant investigated the incident and conducted testing on multiple samples from different areas of the house, which showed the presence of accelerants, including gasoline.  (Doc. 36, Ex. J, Lab. Analysis).  Based on its investigation, Defendant concluded the fire was intentionally set.  (*See* Doc. 34 at ¶ 1).[4]  Under the AICH policy, Plaintiff immediately made a claim to Defendant for the dwelling and her personal property that she claimed was in the rental house at the time of the fire.  (Doc. 36, Ex. G, Pl. Sworn Statement in Proof of Loss; *see also* Doc. 36, Ex. B, Pl. Dep. 204:5-23).  Plaintiff's claim for personal property alone totaled $92,472.41.  (Doc. 36, Ex. G, Pl. Sworn Statement in Proof of Loss, at 2).[5]

---

[3] As the Rule 56 record indicates, on June 6, 2007, Al Morton had been found guilty on federal charges for conspiracy, filing fraudulent tax returns, and bank fraud.  (*See* Doc. 36, Ex. L, Indictment; Doc. 36, Ex. M, Docket Rep. 11).

[4] Reese testified that, based on rumors she heard, she believed Plaintiff hired someone to set the fire so that Plaintiff could collect the insurance proceeds.  (Doc. 36, Ex. C, Reese Dep. 96:3-21).  But, the court cannot properly consider this information in making its Rule 56 ruling.

[5] Reese has testified that, except for a kitchen table and four kitchen chairs, Plaintiff did not have any personal property in the house at the time of the fire.  (Doc. 36, Ex. C, Reese Dep. 30:10-19). Reese provided an affidavit to Defendant that the personal property at the house belonged to her, and provided receipts to Defendant showing ownership of the large furniture items.  (Doc. 36, Ex. R, Reese Aff. 2-3, 15-18).  However, in a June 2007 bankruptcy petition, Plaintiff listed only $1,500 in household goods as personal property.  (Doc. 36, Ex. H, Pl. Bankr. Petition 14).  For the purposes of this Motion, however, the court construes every inference and disputed fact in Plaintiff's favor.  Therefore, for the purposes of this Motion only, the court assumes Plaintiff had furnished the Property with at least $92,472.41 worth of personal property.

Plaintiff's AICH policy includes certain mandatory "duties after loss." (Doc. 36, Ex. I, AICH Policy, at 11 of 21). In the event of a loss, these provisions require a claimant to submit to a signed examination under oath ("EUO") and provide a detailed inventory of allegedly damaged property, along with various records and supporting documentation. (*See id.*). The AICH policy provides: "No action shall be brought UNLESS THERE HAS BEEN COMPLIANCE WITH THE POLICY PROVISIONS." (Doc. 36, Ex. I, AICH Policy, at 13 of 21). On September 21, 2007, pursuant to these "duties after loss" provisions of the AICH policy, Defendant demanded an EUO from Plaintiff and her husband. (Doc. 36, Ex. S, EUO Demand to Pl.; Doc. 36, Ex. AA, EUO Demand to Al Morton). Defendant's letter specifically requested that Plaintiff produce documents at the EUO and warned that Plaintiff's failure to comply with the conditions of the AICH policy could result in a loss of coverage. (Doc. 36, Ex. S, EUO Demand to Pl. at 5).

On October 26, 2007, Defendant conducted the requested EUOs. (Doc. 36, Ex. F, Pl. EUO 2:1-5; Doc. 36, Ex. T, Al Morton EUO 2:1-5). During Plaintiff's EUO, Defendant's counsel reminded Plaintiff of her obligation to sign the witness certification and errata sheet for the EUO before a notary and return it to Defendant as a condition to recovery. (Doc. 36, Ex. F, Pl. EUO 6:25-7:2). Defendant also requested that Plaintiff produce certain additional items for use in its investigation, including (1) payroll information from her employment at Crossroads of Intervention, Plaintiff's family-owned company (*id.* at 21:7-12), (2) a copy of Crossroads' 501(C)(3) report (as it is allegedly a family-owned, nonprofit organization) (*id.* at 22:14-16), (3) loan documents for a consumer loan from that was outstanding at the time of the loss (*id.* at 33:23-34:3), (4) records regarding conversations with her insurance agent regarding the Property (*id.* at 39:13-17), (5) her "house file," which Plaintiff claimed contained documents regarding the

7

rental of the Property and her personal property within the house (*id.* at 40:24-41:8), (6) certain Section 8 paperwork regarding her request for increase in rent (*id.* at 44:2-45:3), (7) contact information for the person Plaintiff claims was to perform work on the Property and was the excuse Plaintiff provided to be at the property around the time of the fire (*id.* at 52:16-23), (8) Section 8 inspection documents (*id.* at 55:17-56:3), (9) banking records regarding Plaintiff's financial condition and alleged ownership of personal property (*id.* at 74:15-75:16), (10) receipts for personal property items in question (*id.* at 102:17-21), and (11) contact information for an individual who Plaintiff claims gave her a $4700 television (*id.* at 111:13-20).

On December 14, 2007, Defendant sent Plaintiff a letter setting out a list of twenty items requested during the EUO, including the above-enumerated items.  (Doc. 36, Ex. U, Def. Letter to Pl., Dec. 14, 2007, at 2-3).  Defendant's letter also enclosed a copy of the EUO and instructed Plaintiff to sign the witness certification and errata sheet and return them to Defendant as conditions to coverage under the AICH policy.  (*Id.*).  Having not received a response from Plaintiff, Defendant again sent a letter to Plaintiff on February 27, 2008, checking on the status of the documents and the completion of the errata sheet.  (Doc. 36, Ex. V, Def. Letter to Pl., Feb. 27, 2008, at 2).  On May 19, 2008, Defendant again wrote to Plaintiff, through her counsel, acknowledging receipt of some documents, but noting that Defendant had still not received many of the documents requested.  Further, Defendant had still not received the signed EUO transcript. (Doc. 36, Ex. W, Def. Letter to Pl., May 19, 2008, at 2).

By February 9, 2010, Defendant still had not received any further communication from Plaintiff or her counsel, and had not received any of the requested information, documents, or signed EUO.  (Doc. 36, Ex. X, Claim Denial, Feb. 9, 2010, at 3).  Accordingly, Defendant wrote

to Plaintiff on February 9, 2010, declining her claim as a result of her noncompliance with the conditions precedent to coverage. (*Id.*).

Prior to Plaintiff's filing this action, almost six years after the fire, Defendant still had never received a copy of Plaintiff's signed EUO or many of the other information and documents it requested throughout its investigation. (*See* Doc. 36, Ex. Y, Alexander Aff. ¶¶ 5-7; Doc. 36, Ex. B, Pl. Dep. 179:2-16).[6] Nor to date has Plaintiff explained her noncompliance. Moreover, in her Objection to Motion for Summary Judgment (Doc. 38), Plaintiff summarily asserts that Defendant is in possession of both an EUO (Doc. 38 at 1) and copies of all documents requested by Defendant. (*Id.* at 2).[7]

Plaintiff filed this action in state court on July 19, 2013. (Doc. 1). Defendant thereafter removed the action to this court. (*Id.*).

## III.    Discussion

After a careful review of Defendant's Motion for Summary Judgment (Doc. 34), along with the briefs and submissions filed in connection with it, and for the reasons outlined in this opinion, the court concludes that Defendant is entitled to summary judgment on Plaintiff's breach of contract claim as a matter of law.

---

[6] Specifically, Defendant claims it never received the following information: Plaintiff's payroll information from her employer, Crossroads to Intervention, which Plaintiff's family owned; Crossroads' 2006 501(C)(3) report to the federal government; loan documents regarding a certain outstanding loan at the time of the fire from the Money Store; records of conversations with Plaintiff's agent regarding the Property; Plaintiff's "house file," which she claimed contained documentation regarding the rental of the house; Section 8 information regarding rent allowed on the property and rejection of Plaintiff's request for higher rent; documents regarding Section 8's inspection of the property; requested receipts for certain personal property items; contact information regarding witnesses that Plaintiff agreed to produce, but had not; and additional banking records. (Doc. 36, Ex. Y, Alexander Aff. ¶ 9; Doc. 36, Ex. B, Pl. Dep. 192:17-198:20).

[7] Plaintiff's Opposition Brief claims that she has delivered Defendant's documents "at least three times." (Doc. 38 at 2). However, Plaintiff has not provided any specific evidence to support this allegation. While under oath, Plaintiff testified that she had no personal knowledge, beyond a purely speculative or subjective belief, that the requested documents were ever delivered to Defendant. (*See* Doc. 36, Ex. B, Pl. Dep. 192:17-202:11 (stating initially that she (Plaintiff) believed the documents were sent, but after further questioning admits to having no personal knowledge of the same)). Ultimately, Plaintiff can only testify as to having delivered many of the requested documents to an earlier attorney. (*Id.*).

**A.      The AICH Policy Does Not Cover the Fire Loss Because Plaintiff Rented the Insured Property and Did Not Live There.**

The AICH policy in this case simply does not provide coverage to Plaintiff, and Defendant is entitled to summary judgment as a matter of law on Plaintiff's breach of contract claim.   As Defendant notes, that the AICH policy does not provide coverage for the Property because she did not reside at the dwelling at the time of the fire.   Plaintiff does not dispute that the Property was not her "residence premises" at the time of the fire.   Instead, Plaintiff claims that Defendant's agent confirmed that the policy would provide coverage after it was converted to a rental property.   For the reasons outlined below, the court concludes that Plaintiff's argument is flawed.

**1.      The Plain Language of the Policy**

Plaintiff does not dispute that the plain language of the insurance contract simply does not permit recovery of the insurance proceeds she seeks in this action.   Under Alabama law, general rules of contract law govern an insurance contract.   *Safeway Ins. Co. of Ala. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005).   Courts must enforce unambiguous insurance policy provisions as written.   *Id.*   Whether a provision of an insurance policy is ambiguous is a question of law.   *Id.*   In this case, as a matter of law, the subject policy is unambiguous.

The AICH policy only provides coverage for "the dwelling on the residence premises shown in the Declarations used principally as a private residence . . . ."   (Doc. 36, Ex. I, AICH Policy, at 2 of 21).   The AICH policy defines "residence premises" as "the one or two family dwelling, other structures and grounds or that part of any other building where *you reside* and which is shown as the 'residence premises' in the Declarations."   (*Id.* at 2 of 21 (emphasis added)).   The AICH policy defines "you" as the named insured listed in the Declarations, which is Tawanna Morton.   (*Id.* at 1 of 21; *see* Doc. 36, Ex. I, Declarations, at 1 of 2).   The property

10

referenced as the "residence premises" in the Declarations is 2407 Longbow Drive, Birmingham, Alabama.  (Doc. 36, Ex. I, Declarations, at 1 of 2).

Courts addressing substantially similar language, under Alabama law, have concluded that homeowners who rent their property but do not reside there are not covered.  *See, e.g.*, *Country Cas. Ins. Co. v. Massey*. 2010 WL 5579881, at *2-4 (M.D. Ala. Dec. 20, 2010)[9] (upholding fire loss claim denial to insured who rented his property because the policy "did not -- by its express terms -- provide coverage for the . . . dwelling, as that was not where [the claimant] "principally reside[d]"); *see also Mahens v. Allstate Ins. Co.*, 447 F. App'x 51, 2011 WL 5299657 (11th Cir. 2011) (holding a similar policy provision "plainly and unambiguously required [the insureds] to reside at the property listed on the policy."); *Nationwide Mut. Fire Ins. Co. v. Facello*, 2014 WL 801051 (S.W. W.Va. Feb. 28, 2014) (holding that the policy did not provide coverage for a dwelling because the named insured did not reside at the property).  Accordingly, for coverage to exist for the dwelling under the clear terms of the AICH policy, Plaintiff must have primarily resided at the Property at the time of the loss.

In July 2007, at the time of the fire, it is undisputed that Plaintiff did not principally reside on the Property.  (Doc. 36, Ex. B, Pl. Dep. 46:7-11, 63:4-7).  In fact, Plaintiff has not resided at the Property since 2004 when she began renting the Property.  (*Id.* at 47:8-14, 48:11-20).  Because Plaintiff did not reside at the Property at the time of the fire, the Property was not Plaintiff's "residence premises," and as Plaintiff's policy only provides dwelling coverage to the "residence premises," Defendant's failure to pay Plaintiff's claim did not breach the insurance contract.

---

[9] In *Massey*, the policy at issue similarly defined "residence premises" as "the dwelling . . . where 'you' principally reside."  *Country Cas.*. 2010 WL 5579881, at *4.

## 2.      Effect of Plaintiff's Alleged Conversation with Her Insurance Agent

As discussed above, Defendant has properly demonstrated that, as a matter of law, Plaintiff was not covered by the terms of the AICH policy for her fire loss.  Therefore, to survive summary judgment, Plaintiff must now come forward with more than mere allegations and present specific factual evidence rebutting Defendant's Motion (Doc. 34).  *See Gargiulo*, 131 F.3d at 999 (facing a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations.").

Plaintiff's Objection to Motion for Summary Judgment argues that, notwithstanding that the plain language of the AICH policy makes clear that it does not cover Plaintiff's loss, Defendant "bears liability in its contract with the Plaintiff and is bound by the 'agreement' made by its agent."  (Doc. 38 at 2-3).[10]   Plaintiff's theory presents two potential issues.  First, did Defendant's general agent enter into an oral contract with Plaintiff that binds Defendant and supersedes later written agreements embodied by the AICH policy?[11]   Second, is Defendant

---

[10] Beyond her own testimony, Plaintiff offers no evidence suggesting this conversation ever took place.  However, for the purposes of summary judgment, of course, the court resolves all reasonable doubts about the facts and all justifiable inferences in favor of the nonmovant.  *See Fitzpatrick*, 2 F.3d at 1115.  Therefore, for the purposes of this Motion only, the court assumes without deciding that an insurance agent at Clark and Associates made the alleged remarks regarding the scope of her coverage.

In doing so, the court does not ignore its previous Order (Doc. 32), entered November 13, 2014.  Plaintiff's alleged conversation with Clark and Associates was one of the subjects of Defendant's Motion to Compel (Doc. 19) and Motion for Enforcement of Order and Sanctions (Doc. 24).  Plaintiff testified, under oath, that she had recordings of this alleged conversation.  However, when the court granted Defendant's Motion to Compel, Plaintiff failed to produce anything.  When Defendant sought sanctions and enforcement of the court's order, the court granted its Motion in part, prohibiting Plaintiff from "relying on subjects of discovery" (*i.e.*, the alleged recording) that she failed to produce.  (Doc. 32).  However, the court only prevented Plaintiff from later submitting the recording into evidence, without leave from the court.  The court did not rule that Plaintiff is barred from relying on the conversation.  In her brief, Plaintiff referenced the conversation, not the recording; therefore, Plaintiff has not violated the court's Order (Doc. 32).

[11] Drawing all inferences in Plaintiff's favor, the record suggests Plaintiff entered into a homeowner's insurance policy with Defendant at or around the time she and her husband purchased the Property.  Sometime before Plaintiff began renting her Property through Section 8, Plaintiff engaged in discussions with Clark and Associates, which Plaintiff now alleges resulted in an "agreement" for expanded coverage.  Plaintiff then continued to renew the AICH policy through the date of the fire in July 2007.  (Doc. 38).  The record is void of any

otherwise contractually bound by an insurance agent's representations that flatly contradict the AICH policy's unambiguous terms?  The court addresses these questions below.

### a.    New Agreement

Even if the AICH policy did not, by its terms, cover Plaintiff's fire loss, Plaintiff argues that Defendant "bears liability in its contract with the Plaintiff and is bound by the '*agreement*' made by its agent."  (Doc. 38 at 2-3 (emphasis added)).  Thus, the question at issue is whether Plaintiff has presented sufficient factual evidence that Plaintiff entered into an oral contract with an agent of Defendant such that she can survive Defendant's Motion for Summary Judgment.

Under Alabama law, only a "general agent" has "authority to transact all of the business of the principal, of a particular kind, or in a particular case."  *Wash. Nat'l Ins. Co. v. Strickland*, 491 So. 2d 872, 874 (Ala. 1985) (citing *S. States Fire Ins. Co. v. Kronenberg*, 74 So. 63, 67 (Ala. 1917)).  The powers of a general agent are "coextensive with the business entrusted to his care, authorizing him to act for the principal in all matters coming within the usual and ordinary scope and character of such business."  *Id.* (citation omitted).  A general agent has full power to bind the insurer to the agent's contract of insurance or to issue policies or to accept risks.  *Id.* (citing *McGhee v. Paramount Life Ins. Co.*, 385 So. 2d 969 (Ala. 1980)).  Ultimately, a general agent "stands in the shoes" of the principal for the purpose of transacting business entrusted to him.

On the other hand, an insurance company also has the right to employ agents with limited authority.  *Wash. Nat. Ins. Co.*, 491 So. 2d at 874 (citing *Robinson v. Aetna Ins. Co.*, 30 So. 665 (Ala. 1901)).  A "special agent," as distinguished from a "general agent," is authorized to act for the principal only in a particular transaction, or in a particular way.  *Id.*  In the insurance context, the most prevalent type of special agent is the "soliciting agent."  *Id.*  A soliciting agent, unlike a

---

evidence tending to suggest that Plaintiff engaged in conversations with Clark and Associates that amounted to an oral contract after the last time she renewed her policy.

general agent, has no power to bind his insurer principal in contract. *Watson v. Prudential Ins. Co.*, 399 So. 2d 285 (Ala. 1981).

Facing Defendant's properly supported Motion for Summary Judgment (Doc. 34), in order for Plaintiff to succeed on her oral contract theory, at a minimum, Plaintiff must offer substantial evidence that indicates both that Defendant's general agent entered into an oral contract with Plaintiff and that the agent had the authority to do so. *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997) (facing a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations" (quoting *Celotex*, 477 U.S. at 323-34)).   However, the Rule 56 record is entirely devoid of any evidence -- much less substantial evidence -- which supports the theory that Clark and Associates is Defendant's "general" agent.   Neither Plaintiff's pleadings nor her briefs allege facts tending to suggests that Clark and Associates were at any relevant time acting as general agents for Defendant.

Plaintiff testified that she spoke with someone, presumably at Clark and Associates, before renting out her property under Section 8.  (Doc. 36, Ex. B, Pl. Dep. 51:2-12; *see also* Doc. 36, Ex. F, Pl. EUO 40:7-19)).   Plaintiff alleges only that she questioned a representative regarding the scope of her then-existing coverage.  (Doc. 36, Ex. B, Pl. Dep. 51:2-19).  Plaintiff has not identified the agent with whom she spoke at Clark and Associates, nor has she pointed to any other conversations regarding her rental agreement with Defendant or any person at Clark and Associates.  (*Id.* at 49:16-18, 52:7-11; *see also* Doc. 36, Ex. F, Pl. EUO 40:16-19).  Plaintiff has not offered even a summary argument that Clark and Associates, or any of its employees, acted as "general agents" for Defendant.   Accordingly, even construing every ambiguity in Plaintiff's favor, Plaintiff has not identified any Rule 56 evidence that tends to support the

ambiguous statement offered in her Objection to Motion for Summary Judgment that she reached an "agreement" with a representative at Clark and Associates.  (Doc. 38 at 3; *see* Doc. 36, Ex. B, Pl. Dep. 49:6-52:11).

Because Plaintiff has not offered any specific factual evidence tending to show Defendant's general agent entered into any oral contract with Plaintiff, Plaintiff's oral contract theory is based only on mere conclusory allegations and necessarily fails.

### b.       Waiver, Enlargement, or Estoppel

Plaintiff's arguments regarding waiver, enlargement and estoppel are, at best, unclear.[12] However, to the extent she argues that her insurance agent's representations contradicting the otherwise straightforward and unambiguous policy language regarding the continuing coverage of her "residence premises" control the scope of her coverage, that argument is off the mark. (Doc. 38 at 2).  Unlike the question presented by her previous "oral contract" theory, the issue here is whether Defendant is contractually bound to its insurance agent's representations that plainly contradict unambiguous policy terms and allegedly induce an insured's detrimental reliance.  It is not.

Alabama law is clear, "[c]overage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written."  *Home Indem. Co. v. Reed Equip. Co.*, 381 So. 2d 45, 50-51 (Ala. 1980). While limitations on coverage are interpreted as narrowly as possible to provide the maximum allowable coverage to the insured, courts may not rewrite the terms of a policy or interpret unambiguous policy language so as to provide coverage that was not intended by the parties.  *See Canal Ins. Co. v. Old Republic Ins. Co.*, 718 So. 2d 8, 12 (Ala. 1998) (citations omitted).  The

---

[12] Plaintiff seems to assert that an insurance agent at Clark and Associates, Melinda James, represented to her (and Section 8 authorities) that the policy would cover her home while it was being rented.  (*Id.*).

doctrine of estoppel "is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom." *Woodall v. Alfa Mut. Ins. Co.*, 658 So. 2d 369, 372 (Ala. 1995) (citing *Home Indem. Co. v. Reed Equipment Co.*, 381 So. 2d 45, 50-51 (Ala. 1980); *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987); *McGee v. Guardian Life Ins. Co.*, 472 So. 2d 993, 995-96 (Ala. 1985)).

For example, in *Canal Insurance Co.*, the Alabama Supreme Court held that an insured was without coverage where an insurance agent allegedly told him that three of his trailers would be covered by a policy because the court concluded the policy was unambiguous in its terms not providing coverage. 718 So. 2d at 13; *see also S. United Life Ins. Co. v. Gregory*, 508 So. 2d 247, 249 (Ala. 1987) (holding "representations made by an agent who solicited the policy are inadmissible to vary the terms of the writings, since in the absence of fraud or mistake such statements are merged into the written contract"). Similarly, in *Woodall*, the plaintiff alleged that, in response to his questions concerning coverage of a commercial general liability insurance policy of claims arising from the insured's sale of alcohol, the defendant-insurance company's agents made statements contradicting the plain language of the plaintiff's policy. The Alabama Supreme Court held that because the policy unambiguously excluded coverage for claims arising from the insured's sale of alcohol, the insured could not sustain an argument of waiver or estoppel. *Woodall*, 658 So. 2d at 372.

Finally, "Alabama follows [a] rule of exclusion regarding parol evidence in interpreting insurance contracts." *S. United Life Ins. Co.*, 508 So. 2d at 249. "In an action to recover on a written contract of insurance, parol evidence is not admissible to aid in the construction of an unambiguous insurance policy." *Id.* (citation omitted)); *see also S. Guar. Ins. Co. v. Rhodes*, 243 So. 2d 717 (1971) (holding where a written contract of insurance exists between two parties,

16

parol evidence cannot be received to explain, contradict, or vary its terms, and all parol negotiations, understandings, and agreements are merged into the written policy).

In June 2007, one month before the fire, Plaintiff claims she renewed her AICH policy, thereby adopting the terms as laid out therein. (Doc. 38 at 2). As discussed in more detail above, the relevant provisions of that policy are unambiguous and unchallenged. These provisions left Plaintiff without homeowner's coverage when she rented her house and resided elsewhere. Therefore, because -- absent allegations of fraud[13] -- an insurance agent's representations will not undermine a policy's clear terms, Plaintiff is unable to recover on her breach of contract claim because the policy's plain terms did not cover a claimant landlord at the time of the fire loss.

### B.   Plaintiff Cannot Sustain a Breach of Contract Claim Because She Failed To Satisfy the Conditions Precedent to Recovery Under the AICH Policy.

The parties' filings make clear that the undisputed Rule 56 record evidence demonstrates that Plaintiff did not comply with conditions precedent to assert coverage under the AICH policy; therefore, Plaintiff cannot maintain her breach-of-contract claim against Defendant. That is, Defendant has pointed to evidence in the Rule 56 file showing that Plaintiff has failed to satisfy the "duties after loss" provisions of the AICH policy. And, although Plaintiff has attempted to create a factual dispute regarding her compliance with the provision, all she has done is assert mere conclusions and unsupported factual allegations; thus, her efforts have failed.

Under Alabama law, where an insured fails to comply with a condition precedent to recovery under an insurance contract, the insured cannot sustain a breach of contract claim. *See,*

---

[13] Plaintiff cites two Alabama Supreme Court cases for the proposition that an insurance company is liable for the false representations of insurance agents to insureds. *See Wash. Nat'l Ins. Co.*, 491 So. 2d 872; *ALFA Mut. Ins. Co. v. Brewton*, 554 So. 2d 953 (Ala. 1989). Both cases involved plaintiffs' claims alleging fraud — not breach of contract. Importantly, an insurance company is liable for the fraudulent conduct of both its general and soliciting agents. *Wash. Nat'l Ins. Co.*, 491 So. 2d 872. However, here, Plaintiff has not proffered any allegation of fraud and the *Washington National* and *ALFA* cases are inapposite.

*e.g.*, *Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264, 269 (Ala. 1998); *Akpan v. Farmers Ins. Exchange, Inc.*, 961 So. 2d 865, 872 (Ala. Civ. App. 2007).   Simply put, "an insured must comply with his or her post-loss obligations when the insured is making a claim upon the insurer, and meeting those obligations is a precondition to any duty on the part of the insurer to make a loss payment." *Baldwin Mut. Ins. Co. v. Adair*, Case No. 1100872, 2014 WL 4851516, at *11 (Ala. Sept. 30, 2014) (citations omitted).   Accordingly, an insurer's "obligation to pay or evaluate the validity of the claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims." *Id.* (citing *United Ins. Co. of Am. v. Cope*, 630 So. 2d 407, 411 (Ala. 1993)).

Courts routinely uphold "duties after loss" provisions obliging insureds to furnish information and documents to the insurer. *Hillery v. Allstate Indem. Co.*, 705 F. Supp. 2d 1343, 1362 (S.D. Ala. 2010); *see, e.g.*, *Nationwide Ins. Co.*, 745 So. 2d at 267 ("An insurance company is entitled to require an insured to submit to an [EUO] as part of its claims investigation process . . . .   Moreover, an insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims.") (citations omitted).   Accordingly, post-loss duty provisions are "strict conditions precedent to coverage." *See Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335, 1348 (M.D. Ala. 2012) (applying Alabama law).   An insured must comply fully with her contractual duties and "cannot pick which duties [] she wants to comply with and then shirk the rest." *Id.* (finding insured's compliance with some, but not all, of insurer's requests was insufficient to satisfy a duties after loss provision).

In this case, the AICH policy contains specific "duties after loss" provisions.  (Doc. 36, Ex. I, AICH Policy, at 11 of 21).   Included in those duties, Plaintiff was required to provide

Defendant with various records and documents and submit to an EUO.  (*Id.*).  The AICH policy specifically provided that the insured must sign the EUO.  (*Id.*).  Further, the AICH policy provides: "No action shall be brought UNLESS THERE HAS BEEN COMPLIANCE WITH THE POLICY PROVISIONS."  (*Id.* at 13 of 21) (emphasis in original).

Plaintiff does not dispute that her failure to comply with the "duties after loss" provisions would preclude her recovery under the AICH policy; rather, she argues that she (or her representatives) have fully complied with the provisions by providing Defendant with all of the information and documents it requested, at least three times.  (Doc. 38 at 1-2).  However, the undisputed Rule 56 record demonstrates that Plaintiff has not fully -- or, for that matter, sufficiently -- complied with Defendant's requests.

Defendant has presented extensive evidence supporting its allegation that Plaintiff has failed to satisfy the conditions precedent of the AICH policy.  During the course of Defendant's investigation, Plaintiff failed to provide signed answers to the EUO and a majority of the documents Defendant required.   Defendant's letters to Plaintiff on September 21, 2007, December 14, 2007, February 27, 2008, May 19, 2008, and February 9, 2010, catalogue Defendant's numerous attempts to solicit this information from Plaintiff.  (Doc. 36, Exs. U, V, W, X; *see also* Doc. 36, Ex. F, Pl. EUO (requesting repeatedly, during the EUO, Plaintiff's production of certain items for use in its investigation)).  Throughout this saga, Plaintiff either failed to respond (*see* Doc. 36, Ex. V, Def. Letter to Pl., Feb. 27, 2008, at 2), or gave Defendant only partial responses (*see* Doc. 36, Ex. W, Def. Letter to Pl., May 19, 2008, at 2).  Finally, more than two years after Plaintiff's EUO and Defendant's initial requests for information, Defendant declined Plaintiff's claim as a result of her noncompliance with the conditions precedent to coverage.  (Doc. 36, Ex. X, Claim Denial, Feb. 9, 2010, at 3).  Defendant offers a sworn affidavit

asserting that, before Plaintiff filed suit, Defendant never received the signed EUO or certain other requested documentation.  (Doc. 36, Ex. Y, Alexander Aff. ¶¶ 7-9).

Conversely, Plaintiff has presented no substantial evidence, at all, which contradicts Defendant's claims or that supports her conclusory allegations that she complied with the conditions precedent.  Plaintiff's Objection to Motion for Summary Judgment boldly claims that Plaintiff provided Defendant a signed EUO and "all documents requested . . . at least three times."  (Doc. 38 at 1-2).  The Rule 56 record does not support Plaintiff's bald assertion.

In an apparent attempt to support her contention (that she provided Defendant with a signed EUO), Plaintiff cites to two miscellaneous documents.  Neither is of any help to Plaintiff.  First, Plaintiff identifies a letter from her previous attorney that insinuates Defendant had in its possession an EUO.  (Doc. 38, Ex. A, Goldasich Letter, June 11, 2010).  But this letter does not in any way indicate that Defendant had in its possession a *signed* EUO.  (*Id.*).  Of course, Defendant had in its possession a *copy* of the EUO — Defendant conducted the EUO and provided Plaintiff with a copy of the EUO with instructions for her to sign and return it.  (Doc. 36 at 7).  The only issue -- and it is an issue which Plaintiff's letter does not address -- is whether Plaintiff ever fulfilled her obligation to sign and return the EUO.  Second, Plaintiff offers a copy of her signed Sworn Statement of Loss, implying that the document is Plaintiff's signed EUO.  (Doc. 38, Ex. B, Sworn Statement of Loss at 2).  This Statement of Loss, which was also provided by Defendant in its initial evidentiary submission, however, is not the requested EUO.  Therefore, it is irrelevant to the issue of whether Defendant received a signed EUO as mandated by the AICH policy.

Accordingly, Plaintiff has not offered any substantial evidence contradicting Defendant's sworn affidavit stating that it never received a signed EUO.  Plaintiff's failure to simply sign and

submit the EUO is alone sufficient for the court to conclude that Plaintiff failed to comply with the conditions precedent to recovery under the AICH policy.  But there is more.

Although the EUO is the only document at issue that Plaintiff specifically references in her responsive brief, the undisputed Rule 56 record shows that Plaintiff also failed to provide as many as ten categories of documents and information that Defendant requested.  Plaintiff has testified that she has no personal knowledge or evidence that any of these requested documents were ever provided to Defendant.  (Doc. 36, Ex. B, Pl. Dep. 192:17-202:11).  A letter submitted by Plaintiff, through a previous attorney, indicates that, based on Plaintiff's testimony in the EUO, "it is obvious [Defendant] is in possession of this material."  (Doc. 38, Ex. A, Goldasich Letter, June 11, 2010).  Importantly, in the letter, Plaintiff does not claim that she submitted the requested materials to Defendant, nor does Plaintiff's letter indicate she, or her representatives, had any knowledge that Defendant had the requested materials (beyond, of course, the assumptions it made from Plaintiff's questioning in the EUO).

Moreover, the court notes that on June 11, 2010, Defendant responded to Plaintiff clarifying that it did not have the requested materials, and that Plaintiff's stated assumptions were mistaken.  (Doc. 36, Ex. 2 to Pl. Dep., Def. Letter to Pl., Aug. 17, 2010, at 78 of 82).  Having reviewed the EUO transcript, the court finds Plaintiff's "assumptions" untenable and, even more importantly, wholly unsupported by the undisputed Rule 56 evidence.  Plaintiff has not indicated, nor can the court find, where Defendant acknowledged it had the information it had previously requested.  Of course, even if Defendant was in possession of certain requested material, without more, that would not release Plaintiff from her obligation to satisfy her duties after loss.[14]  Plaintiff's counsel's letter directly conflicts with the undisputed Rule 56 evidence in

---

[14] For example, Defendant requested Plaintiff to provide information regarding Terrell Bradley's funeral and funeral home in order to verify Plaintiff's alibi suggesting that Plaintiff arrived in Tampa on July 29, 20007, the

the case, and with Plaintiff's own sworn deposition testimony.  (*See, e.g.*, Doc. 36, Ex. B, Pl. Dep. 192:17-202:11).

Other than Plaintiff's conclusory allegations, no evidence (much less substantial evidence) supports her claim that she, or her representative, ever submitted the information and documents that Defendant has requested.  Plaintiff's unsupported assertions cannot be used to defeat Defendant's Motion (Doc. 34).  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."). Consequently, to survive Defendant's properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting her claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. 242 (1986)). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield*, 115 F.3d at 1564 n.6; *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir.1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984)

---

date of the fire.  Defendant, on the other hand, was in possession of a newspaper article that suggested Bradley's funeral occurred on July 26, not July 31, as Plaintiff testified.  (*See* Def. Letter to Pl., Aug. 17, 2010, at 81 of 82).

("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the *prima facie* case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate). Because the undisputed Rule 56 record shows that Plaintiff did not comply with conditions precedent to coverage under the AICH policy, Plaintiff cannot sustain her breach of contract claim.

### C.     Plaintiff's Personal Property Claim

Even if the court were to construe the AICH policy as providing some form of coverage to Plaintiff at the time of the fire loss, the policy does not provide coverage for Plaintiff's personal property claim. Included in the list of personal property that the policy does *not* cover is "[p]roperty contained in an apartment regularly rented or held for rental to others by the insured." (Doc. 36, Ex. I, AICH Policy, 4 of 21). Thus, Defendant argues that the plain terms of the policy exclude from coverage any personal property held on the property if it is regularly held out for rental. The court agrees.

Plaintiff does not dispute that she was renting the Property to Shauna Reese at the time of the July 2007 fire. And, although the fact is in dispute, Plaintiff further alleges (and for the purposes of this Motion the court assumes) that certain of Plaintiff's personal property was located in the house at that time. But, because the AICH policy does not cover any of the

personal property that Plaintiff may have left in the home at the time of the fire, Plaintiff cannot make a claim for that property here.

Finally, and alternatively, because Plaintiff has not addressed Defendant's argument that the AICH policy does not provide coverage to Plaintiff for her personal property, Plaintiff is deemed to have abandoned this point. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned, and affirming grant of summary judgment, as to claim presented in complaint but not raised in initial response to motion for summary judgment); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000) (finding claim abandoned where it was not briefed and argued in district court in party's response to motion for summary judgment or in party's own motion for summary judgment); *see also Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (11th Cir. 1999) (affirming "the unremarkable position that assertions made in the pleadings (*e.g.*, complaint or answer), but not made in opposition to a motion for summary judgment, need not be considered by the district court or the appellate court in ruling on the motion for summary judgment"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.' There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Accordingly, with respect to this aspect of Plaintiff's breach of contract claim, Defendant is entitled to summary judgment.

**IV.**     **Conclusion**

For the reasons outlined above, Defendant's Motion for Summary Judgment (Doc. 34) is due to be granted.  Plaintiff has failed to create any genuine issue of material fact as to her breach of contract claims.  Accordingly, Plaintiff's claims are due to be dismissed with prejudice.

A separate order will be entered in accordance with this Memorandum Opinion.

**DONE** and **ORDERED** this April 9, 2015.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE